Y-TA-TAH-WAH v. REBOCK et al.

(Circuit Court, N. D. Iowa, Cedar Rapids Division. December 1, 1900.)

1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—RIGHTS OF TRIBAL INDIANS.

An action by a tribal Indian, living on a reservation, to recover damages for his arrest by defendants for violation of a state statute, on the ground that such statute was not applicable to the plaintiff, involves a construction of the laws and treaties of the United States, and is of federal cognizance.[1]

2. ABATEMENT—LAWS GOVERNING—ACTION BY TRIBAL INDIAN.

The fact that tribal Indians residing on a reservation within a state under charge of Indian agents are not subject to the laws of the state as to their property rights does not prevent such Indians from maintaining actions for the protection of their rights either of person or property, in the courts of the state or in federal courts therein, where such courts have jurisdiction by reason of the questions involved; and where such an action has been brought, and the court has acquired jurisdiction over the parties, the effect of the death of the plaintiff upon the action is determined by the state statutes.

3. INDIANS—POWER OF STATE COURT TO APPOINT ADMINISTRATOR.

On the death of a tribal Indian residing upon a reservation, his property does not become subject to the laws of distribution of the state in which the reservation is situated, but descends in accordance with the custom of his tribe; and hence the courts of the state have no jurisdiction to appoint an administrator for his estate, there being no property within its jurisdiction to be administered.

4. ABATEMENT AND REVIVAL—IOWA STATUTE—ACTION BY TRIBAL INDIAN.

By the statute of Iowa (Code, §§ 3443-3445), all causes of actions survive notwithstanding the death of the person entitled thereto, and it is provided that on the death of such person an action "may be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased." Under the decisions of the supreme court of the state, actions for personal torts must be brought or continued in the name of the administrator of the deceased. A tribal Indian, residing upon a reservation within the state, brought suit in a federal court to recover damages for his wrongful arrest by defendants for violation of a state statute, which plaintiff alleged was not applicable to him because of his status as a tribal Indian, and pending the action plaintiff died. Held, that the purpose of the statute being to remove an obstruction to the enforcement of rights existing at common law, by preserving the right of action therefor for the benefit of the successors in interest of the deceased, and there being no court with jurisdiction to appoint an administrator, mere matters of form must yield to substantive rights, and the court would permit the substitution as plaintiffs of the successors in interest of the decedent under the customs of the tribe.

On Motion to Substitute the Next of Kin as Plaintiffs in Place of the Deceased Plaintiff.

Charles A. Clark & Son, J. W. Lamb, and W. S. Clark, for plaintiff. Struble & Stiger and J. R. Caldwell, for defendants.

SHIRAS, District Judge. This action was brought in this court by Y-ta-tah-wah, a tribal Indian living on the Indian reservation in Tama county, Iowa, to recover damages for an alleged false arrest and imprisonment brought about by the defendant H. M. Re-

[1] Jurisdiction in cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308, and Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

bock, who was at that time the agent appointed by the United States, and placed in charge of the Indians upon the named reservation; the defendant Tode being the sheriff of the county. From the allegations of the petition, it appears that Y-ta-tah-wah acted as a "medicine man" in his tribe, and the proceedings instituted against him by the Indian agent charged him with practicing medicine without having obtained a license, as required by the provisions of the state statute, and without pursuing the studies and passing the examinations required thereby. It is further averred in the petition that the provisions of the state statute are not applicable to the tribal Indians in Tama county, and that the action of the defendants was wholly without authority. Subsequent to the bringing of the action the plaintiff died, and his heirs and next of kin now seek to be substituted as plaintiffs in the action, and the defendants move to strike the application from the files upon three general grounds: (1) That the court did not have jurisdiction over the action as originally brought; (2) that the right of action, if any existed in favor of the original plaintiff, died with him; and (3) that, if a right of substitution exists, it must be under the terms of the statute of Iowa, which authorizes the substitution of the administrator of the deceased, but not of his heirs at law. In support of the objection to the jurisdiction of the court over the action as originally brought, it is contended that the petition does not show on its face that the action is based upon the laws of the United States. This question was considered and passed upon in the case of Peters v. Malin (decided at the present term) 104 Fed. 849, it being therein held that it appeared from the allegations of the petition that the right of action relied on was based upon the laws and treaties of the United States in such sense that the case was clearly one of federal cognizance; and, following the ruling in that case, it must be held that the court had jurisdiction over the suit as originally brought.

The next proposition to be considered is whether the right of action died with the original plaintiff, or whether it survived under the law applicable to the situation. The nature of the action, being for injuries to the person, is such that at the common law it would not survive; but by section 3443 of the Code of Iowa it is enacted that "all causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." On behalf of the defendants, it is contended that the laws of the state are not applicable to the property rights of tribal Indians residing on reservations under charge of Indian agents, and in many respects this contention is doubtless well founded. It is the general rule that so long as the tribal organization is maintained, and so long as "the United States recognizes their national character, they are under the protection of treaties and the laws of congress, and their property is withdrawn from the operation of state laws." The Kansas Indians, 5 Wall. 757, 18 L. Ed. 667. It does not follow from this, however, that a tribal Indian may not invoke judicial aid for the protection or enforcement of his personal or property rights. By the provisions of the act of the general assembly of Iowa, ap-

proved July 15, 1856, the state consented that these Indians should reside in the state, and, being thus residents in the state, they would come within the protection of section 1, art. 1, of the state constitution, which declares that "all men are, by nature, free and equal and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness." Courts of justice are created for the purpose of aiding in the protection of life, liberty, and the rights in and to property, and certainly it would be a violation of the true meaning and spirit of the constitutional declaration if any court in Iowa, state or federal, should refuse its aid, when invoked, for the protection of life, liberty, or property, on the sole ground that the person seeking its aid was an Indian.

In the case of Felix v. Patrick (C. C.) 36 Fed. 457, Judge Brewer expressly upheld the jurisdiction of the circuit court of the United States, the plaintiff therein being an Indian; and further stated in his opinion that "as a matter of fact Indians are frequent suitors in the courts of the various states." In that case the complainant's bill was dismissed on the ground of laches, in that suit had been delayed for many years, it being held that the state courts were open to the Indian; and on appeal the supreme court affirmed the ruling on the same ground, saying that "the courts of Nebraska were open to them, as they are to all persons, irrespective of race or color." Felix v. Patrick, 145 U. S. 317, 332, 12 Sup. Ct. 862, 36 L. Ed. 719.

While it is true, as is said in the case just cited, that ordinarily tribal Indians are not deemed to be citizens in such sense as to enable them to bring suit in the federal courts, on the ground of diverse citizenship, yet, in all cases coming within federal jurisdiction by reason of the questions involved, the tribal Indian has always been recognized as a proper suitor before the federal tribunals. Wau-pe-man-qua v. Aldrich (C. C.) 28 Fed. 489; Fellows v. Blacksmith, 19 How. 367, 15 L. Ed. 684; Elk v. Wilkins, 112 U. S. 94, 5 Sup. Ct. 41, 28 L. Ed. 643. The court whose aid is rightfully sought, whether state or federal, has the power to enforce the rights pertaining to the suitor, no matter whether the same are based upon the common law, or the statutes of a state, or the recognized customs of the Indian tribes.

Thus, in Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439, a case involving the question whether a federal court in New York could recognize and enforce a cause of action created by a statute of the state of New Jersey, giving a civil remedy for damages resulting from the death of a party, it was held that:

"Wherever, by either the common law or the statute law of a state, a right of action has become fixed, and a legal liability incurred, that liability may be enforced, and the right of action pursued, in any court which has jurisdiction of such matters, and can obtain jurisdiction of the parties. The action in the present case is in the nature of trespass to the person, always held to be transitory, and the venue immaterial. The local court in New York and the circuit court of the United States were competent to try such a case when the parties were properly before it."

The ruling in this case was cited and approved by the supreme court of Iowa in Morris v. Railway Co., 65 Iowa, 727, 23 N. W. 143, a suit brought in Iowa to recover damages caused by the death of a railroad employé in Illinois, the statute of the latter state giving a right of action in such cases, it being therein said:

"It is not necessary that we should go further in this case than to hold that the action can be maintained, because the recovery sought is in accord with our laws and the policy of our state; and yet we think, as is said in Dennick's Case. supra: 'It would be a very dangerous doctrine to establish that, in all cases where the several states have substituted the statute for the common law, the liability can be enforced in no other state but that where the statute was enacted and the transaction occurred.' "

These authorities clearly demonstrate that, if it be true that the defendants were guilty of a trespass to the person of the Indian, the injured party had the right to bring suit for the damages caused him in any state court within whose territorial jurisdiction the defendants could be found, and in the federal court in whose district the defendants reside. The defendants, being citizens and residents of Iowa, cannot question the jurisdiction of the courts of Iowa over them, and the Indian, though not a citizen, by invoking the aid of the court, submits himself to the jurisdiction thereof, and the court, having obtained jurisdiction over the parties, will apply the law, no matter what its source, that is applicable to the question in dispute, and the same rule will be followed in cases coming within federal jurisdiction. If the defendants, without right or authority so to do,—a question to be solved by the laws and treaties of the United States,—undertook to subject the Indians to the provisions of the state laws regulating the practice of medicine therein, and in so doing committed a trespass on his person, then the common law would give a right of action therefor, and to enforce the same the courts, state and federal, were open to the injured party.

The original plaintiff brought the action at law for damages in this court, and, the suit being thus properly brought in this court, the question of the effect of the death of the plaintiff is to be determined by the law of the state, just the same as it would had the party chosen to have brought the action in the state court. The cause of action arose in the state of Iowa, and it is the law of the state that the death of a party shall not terminate the right of action, and therefore it must be held that the cause of action which accrued to Y-ta-tah-wah during his lifetime is still in existence, under the express declaration of the Code of Iowa that "all causes of action shall survive."

The more difficult question, perhaps, arises under the claim that, under the provisions of the state law, actions for damages to the person, brought or continued after the death of the party injured, must be maintained in the name of the personal representative, to wit, the administrator of the deceased. As already stated, section 3443 of the Code of Iowa enacts that all causes of action shall survive, notwithstanding the death of the party entitled thereto; and section 3444 declares that the right of civil remedy is not merged in a public offense; and then follows section 3445, which provides that "any action contemplated in the two preceding sections, may

be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased." It is well settled by the decision of the supreme court of Iowa that actions for personal injuries should be brought or continued in the name of the administrator, in case of the death of the injured party either before or after the bringing of the action; and, relying upon this rule, defendants herein contend that it is not within the discretion of the court to permit the action to be continued in the name and for the benefit of the next of kin or heirs of the deceased. If it were possible in this case to lawfully secure the appointment of an administrator for the estate of the deceased Indian, it might well be the duty of the court·to require the parties in interest to obtain the appointment of an administrator in order that he might be substituted for the deceased plaintiff in this action. The basis of the jurisdiction of the state district court, acting as a court of probate, to appoint an administrator in a given case, is the presence of property belonging to the decedent within the territorial jurisdiction of the courts. If the person at the time of his death was a resident of the county, then jurisdiction in that county exists because the situs of his property for probate purposes is that of his residence; but, if he was not a resident, then it must appear that in fact there is property belonging to the estate in the county in order to confer jurisdiction. Christy v. Vest, 36 Iowa, 285.

An administrator is appointed in order that he may care for and properly distribute the property of the intestate decedent, but, if there is no estate within the jurisdiction of the probate court, then an appointment would be nugatory. Therefore, in the case at bar, the district court of Tama county has not jurisdiction to appoint an administrator of the estate of the deceased plaintiff, unless the property or property rights left by him are within the probate jurisdiction of the state.

As the plaintiff was at the time of his death, and always had been, a tribal Indian, his property was not subject to the laws of the state. The Kansas Indians, 5 Wall. 737, 18 L. Ed. 667; Jones v. Meehan, 175 U. S. 1, 20 Sup. Ct. 1, 44 L. Ed. 49. If it be true, as it undoubtedly is, that during the lifetime of the deceased plaintiff his property, he being a tribal Indian, was not subject to the laws of the state, then certainly the fact of his death would not subject the property to the laws of the state, but the same would be disposed of according to the customs of the tribe of which he was a member. This general question is fully discussed in the above-cited case of Jones v. Meehan, 175 U. S. 1, 20 Sup. Ct. 1, 44 L. Ed. 49, in which was involved the question of the title of certain realty situated in Minnesota which had been the property of a tribal Indian, and it was therein held that "the elder chief, Moose Dung, being a member of an Indian tribe whose tribal organization was still recognized by the government of the United States, the right of inheritance in his land at the time of his death was controlled by the laws, usages, and customs of the tribe, and not by the law of the state of Minnesota, nor by any action of the secretary of the

interior." If it were true that, upon the death of a tribal Indian, his property, real and personal, became subject to the laws of the state directing the mode of distribution of estates of decedents, it is apparent that irremediable confusion would be caused thereby in the affairs of the Indians, and hence the necessity for enforcing the rule that the property of the tribal Indians is wholly without the plane of the state laws, although actually situated within the territorial boundary of the state. Under these circumstances, it seems clear that the district court of Tama county could not rightfully undertake to administer the estate of the deceased plaintiff, and an appointment of an administrator to that end would be without jurisdiction, and hence wholly nugatory. If, therefore, the present suit cannot be continued in any other name than that of an administrator, then the contention of the defendants must be sustained, and the action be dismissed, for the reason that the parties asking to be substituted are not the administrators, and cannot be made such, of the deceased plaintiff.

Under the statutes of the state, it is the settled rule that the administrator is the proper party to maintain suits for the collection of the debts and the enforcement of claims belonging to a deceased person at the time of his death. But this rule is not without exception. If for any reason administration of an estate cannot be had, any person interested in the property of the deceased may establish and enforce his right by a proceeding at law or in equity as the facts of the particular case may require. Thus, in Haynes v. Harris, 33 Iowa, 516, wherein suit was brought to recover on a promissory note by the heirs of the deceased payee, it was held that, as it did not appear that there was any obstacle to the appointment of an administrator, the suit could not be maintained by the heirs, but it was also held that "there is no impropriety in our expressing the opinion that plaintiffs are not without a remedy, in case it be made to appear that there are no debts against the estate, and letters of administration, on account of the lapse of time, cannot be taken out. In such a case, plaintiffs' legal or equitable rights to the proceeds of the note could not be questioned. If the law would supply no remedy, equity, which is for 'the correction of that wherein the law, by reason of its universality, is deficient,' would afford relief." This ruling is clearly a recognition of the principle that the fact that an administrator cannot be appointed to enforce a claim or debt due to an intestate during his lifetime will not have the effect of discharging the claim or debt, but, upon a proper showing, a party interested therein, either as a creditor or heir, may institute legal proceedings to enforce payment against the debtor. It certainly would be considered a reproach upon our judicial system if it were true that debts due from residents of the state to members of the Indian tribe could not be enforced after the death of the Indian creditor, solely for the reason that no provision is made for the appointment of an administrator of the Indian's estate. Furthermore, it is not true that the state law in terms limits the survivorship of actions only to the personal representatives. Section 3445 of the Code of Iowa declares that

the court, on motion, "may allow the action to be continued by or against the legal representatives or successors in interest of the deceased." If, in a given case, there is no legal representative,—that is, no executor or administrator,—and none can be legally appointed, then the action may be continued by or against the successors in interest.

If it be true in the present case that an administrator cannot be appointed to represent the interest or estate of the deceased plaintiff, is it not clear, under the express terms of the Code, that the court may allow the action to be continued in the names of the successors in interest of the deceased? Confining the question solely to the construction to be given to the language of the Code, it must be held that it is within the power of the court to allow the action to be continued in the name of the heirs as the successors in interest to the original plaintiff in cases wherein the appointment of an administrator cannot be had. Taking a broader view of the question, as one arising under the rule to be followed when judicial aid is sought for the enforcement of a cause of action arising under the common law, and not created by a state statute, is it not within the power of the court whose aid is invoked to recognize, as to matter of form, a procedure which will give protection to substantive rights, rather than to make matter of substance yield to matter of form?

When a statute creates a cause of action out of a condition of facts which, aside from the statute, would not constitute ground for an action, and the statute also declares the remedy to be pursued for the enforcement of the statutory cause of action, it is the usual rule that parties are limited to the remedy thus provided. Where, however, the facts are such that they would constitute a cause of action at the common law, and a state statute, in aid of the enforcement of such a cause, removes some obstacle to the right of action, and in aid of that purpose provides a method of enforcing the cause of action, as by providing for suit in the name of the personal representative, the main purpose of the statute is the preservation of the cause of action, which purpose will be recognized and enforced by all courts; whereas, the provision of the statute that the suit may be brought in the name of the personal representative is merely directory, and, while it should be followed in all cases wherein a personal representative can be legally appointed, yet, when that cannot be done, courts will recognize the right of the real parties in interest to enforce the cause of action by a proper proceeding at law or in equity. This I understand to be the meaning of the supreme court in the ruling made in Stewart v. Railroad Co., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537. The action in that case was brought by Stewart, as the administrator of Andrew Casey, in the supreme court of the District of Columbia, to recover damages for the death of Casey, caused by the negligence of the railway company in the state of Maryland. The Maryland statute gave a right of action in cases of death resulting from negligence, and provided that the action should be brought by and in the name of the state of Maryland. The statute in force in the District of Columbia also

gave a right of action in like cases, but provided that suit should be brought in the name of the personal representative. If the suit had been brought in Maryland, where the cause of action, to wit, the killing of Casey, was created, it would have been brought in the name of the state. In fact, the suit was brought in the District of Columbia, in the name of the administrator; the statute of the District giving the right of action to the personal representative. The court of appeals of the District dismissed the action, holding that the statute in Maryland not only created a statutory liability, but prescribed a particular remedy, and that no action could be maintained, either in Maryland or elsewhere, unless that special remedy was pursued. The supreme court reversed this ruling, holding that:

"A negligent act causing death is in itself a tort, and, were it not for the rule founded on the maxim, 'Actio personalis moritur cum persona,' damages therefor could have been recovered in an action at the common law. The case differs in this important feature from those in which a penalty is imposed for an act in itself not wrongful, in which a purely statutory delict is created. The purpose of the several statutes passed in the states, in more or less conformity to what is known as 'Lord Campbell's Act,' is to provide the means for recovering the damages caused by that which is essentially and in its nature a tort. Such statutes are not penal, but remedial, for the benefit of the persons injured by the death. * * * It may well be that, where a purely statutory right is created, the special remedy provided by the statute for the enforcement of that right must be pursued; but, where the statute simply takes away a common-law obstacle to a recovery for an admitted tort, it would seem not unreasonable to hold that an action for that tort can be maintained in any state in which that common-law obstacle has been removed. * * * The two statutes differ as to the party in whose name the suit is to be brought. In Maryland, the plaintiff is the state; in this District, the personal representative of the deceased. But neither the state in the one case, nor the personal representative of the deceased in the other, has any pecuniary interest in the recovery. Each is simply a nominal plaintiff. * * * For purposes of jurisdiction in the federal courts, regard is had to the real, rather than to the nominal, party. * * * And so, within the rule heretofore announced in this court, it must be held that the plaintiff was entitled to maintain this action in the courts of the District for the benefit of the persons designated in the statute of Maryland."

Thus, the supreme court held that although the cause of action arose in Maryland, and though the suit in the District of Columbia was brought for the benefit of the persons designated in the statute of Maryland, and although the statute of Maryland required the suit to be in the name of the state, yet this provision, being as to a matter of form, would not control in the courts of the District, which could entertain the action in the form recognized in that jurisdiction. In substance, the statute of Iowa provides for the survival of all actions for the benefit of the successors in interest of the person deceased, and, an interest in the chose in action being thus recognized to exist in the successors in interest, they should and will be permitted to continue suit for the protection of their rights in their own names, in all cases wherein a legal representative cannot act in their behalf.

Unless this be the rule, it would follow that if a white man should take the property of the tribal Indian without right, and, pending the suit to recover possession thereof, the Indian should die, then the wrongdoer would retain the property, although clearly not en-

titled thereto. To obviate wrongs of this nature, it must be held that, in all cases wherein an administrator cannot be appointed as the representative of the interests of the heirs of the deceased person, then the courts will permit the heirs, they being the real parties in interest, to become the parties to the suit, and in this way the litigation will be conducted between the real parties in interest, and matter of substance will not be sacrificed to mere matter of form.

So far the question has been considered in the light only of the state statute; but, in the final determination of the matter, regard must be had to the provisions of section 955, Rev. St., wherein it is declared that:

"When either of the parties, whether plaintiff, or petitioner, or defendant, in any suit in any court of the United States, dies before final judgment, the executor or administrator of such deceased party may, in case the cause of action survives by law, prosecute or defend any such suit to final judgment."

Construing this section, it is held that with respect to actions which at common law would abate with the death of the plaintiff, and in the absence of congressional legislation, recourse must be had to the law of the state wherein the action is pending to determine whether the cause of action survives the death of the plaintiff. Martin v. Railroad Co., 151 U. S. 673, 14 Sup. Ct. 533, 38 L. Ed. 311. As already pointed out, this action, being for injuries to the person, did not die with the death of the plaintiff; the declaration of the state statute being that:

"All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same."

And therefore, in the absence of legislation on the subject-matter by congress, the rule established by the state statute governs this court under the provisions of section 721, Rev. St. Henshaw v. Miller, 17 How. 212, 15 L. Ed. 222. The death of the original plaintiff after the institution of the suit did not, therefore, abate the cause of action, and the only question is whether the suit can be revived and continued in any other name or form than that of an administrator, under the provisions of section 955, above cited.

In Ex parte Schreiber, 110 U. S. 76, 3 Sup. Ct. 423, 28 L. Ed. 65, it is said:

"If the cause of action survives, the practice, pleadings, and forms and modes of proceeding in the courts of the state may be resorted to in the courts of the United States for the purpose of keeping the suit alive and bringing in the proper parties. Rev. St. § 914. But, if the cause of action dies with the person, the suit abates, and cannot be revived. Whether an action survives depends on the substance of the cause of action, not on the forms of proceedings to enforce it."

In Railroad Co. v. Joy, 173 U. S. 226, 19 Sup. Ct. 387, 43 L. Ed. 677, it was held that a right given by a statute of a state to revive a pending action for personal injuries in case of the death of the plaintiff is not lost by a removal of the case into a federal court; it being further ruled therein that congress—

"Has not established any rule that will prevent a recognition of the state law under which the present action was originally instituted, and which, at the

time the suit was brought, conferred the right, when the plaintiff in an action for personal injuries died before final judgment, to revive in the name of his personal representative."

See, also, Ex parte Connaway, 178 U. S. 421, 20 Sup. Ct. 951, 44 L. Ed. 1134.

From these rulings of the supreme court the following principles are fairly deducible: (1) That the right of survival of causes of action, notwithstanding the death of the party to whom the right of action originally accrued, created by the provisions of state statutes, is a matter of substance, not of form; (2) that, in the absence of congressional action, recourse may be had to the laws of the state wherein the action is pending, in order to determine whether the cause of action abates on the death of an original plaintiff; (3) that, in case the cause of action survives the death of the plaintiff, then under the provisions of section 955, Rev. St., the action may be continued in the name of the executor or administrator; (4) that, in cases wherein the provisions of section 955 cannot be availed of, by reason of the fact that an executor or administrator cannot be appointed, then, if the state law provides a mode of procedure, in the name of the real parties in interest, by which the cause of action may be prosecuted, the same may be availed of in the courts of the United States. Under the facts of this case, I therefore hold that upon the death of the plaintiff the cause of action declared on did not die, but under the provisions of the Code of Iowa it survived for the benefit of the heirs of said plaintiff; and, as it appears that there is no executor or administrator of his estate and that none can be appointed, the plaintiff being at the time of his death a tribal Indian, residing upon an Indian reservation, it follows that the provisions of section 955, Rev. St., cannot be made applicable to the case, and resort must therefore be had to the statutes of the state in determining in what form or mode the action can be continued, and, as the state statute provides for continuing actions in the name of the successors in interest, as well as in the name of a legal representative, the action may be continued in the names of those persons who, under the tribal laws and customs obtaining among the Indians on the reservation in Tama county, Iowa, constitute the heirs of the deceased plaintiff.