**CURTIS v. CAMPBELL.**

**No. 5603.**

Circuit Court of Appeals, Third Circuit.

Feb. 11, 1935.

Richard A. Smith, Louis Wagner, and T. J. Clary, all of Philadelphia, Pa., for appellant.

Chester N. Farr, Jr., of Philadelphia, Pa., and Dwight E. Rorer, of Washington, D. C., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

A motor-driven concrete mixer, owned by Fred L. Curtis and operated by his servants, left the road and ran over and instantly killed Nancy Jean Campbell, a twenty-two months' old child. The accident occurred in Virginia. Nancy Campbell was a resident of that state; Fred L. Curtis a resident of Pennsylvania. The child's administrator brought this action in the District Court of the United States for the Eastern District of Pennsylvania, alleging death was due to negligence of the defendant in operating the motor-driven mixer when the brakes and steering gear were defective and out of repair and known to him to be so.

Curtis died and his wife, as administratrix, was made party defendant.

At the trial the court instructed the jury that should they find the child's death was occasioned by negligence of the defendant as alleged, they should measure the damages in the way provided by the Virginia statute as construed by the courts of that state. On that instruction the plaintiff had a verdict. From the judgment which followed the defendant appealed, raising the sole question whether, in a suit brought in a federal court in a Pennsylvania district on a tort committed in Virginia, the measure of recovery is for the elements of damages allowed for death by the Virginia statute (Code 1930; § 5787), or is confined to those allowed by the Pennsylvania statute (12 PS § 1601 et seq.), as interpreted and defined by the courts of the respective states.

The death acts of the two states are strikingly similar. The right of action which each accords is for the wrongful act. Neither defines the elements of damages or the items of loss allowable, or otherwise prescribes a measure of damages. The Virginia statute limits the amount that may be recovered, which is greater than that recovered in this suit, while the Pennsylvania statute has no such limitation. On these almost identical statutes there is a clear conflict in their interpretation by the courts of the two states. Virginia courts construe the Virginia statute as allowing recovery for earnings during what would have been the prospective life of the decedent, for the care, society and attention the decedent could have given parents, and

a further sum for solace and comfort, for sorrow and mental anguish which the death caused; while Pennsylvania courts, construing the statute of that state, hold there can be no recovery beyond pecuniary loss. Pennsylvania Railroad Co. v. Vandever, 36 Pa. 298, 304; Caldwell v. Brown, 53 Pa. 453, 459; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185, 189, 36 Am. Rep. 662; Gaydos v. Domabyl, 301 Pa. 523, 531, 152 A. 549.

In this rather narrow yet entirely valid controversy, both parties agree to the broad legal proposition that rights acquired under a statute of one state will, in comity, be enforced by the courts of another state, if not against its public policy. The parties, however, separate and sharply disagree on what constitutes public policy and where may be found a declaration of the public policy of the state in which a suit is brought on a foreign cause of action.

The defendant's position is that the policy of the state—the forum of the action —is to be found in its laws; and when a law of the locus of the action differs from and therefore (she says) contravenes a corresponding law of the forum, the law of the former state will not be enforced. Or, stated briefly, with reference to suits in federal courts where no federal question is involved, local laws and decisions will be applied, citing 2 Cyclopedia of Federal Procedure, § 404; Blackwell v. Southern Pacific Co. (C. C.) 184 F. 489; Gallagher v. Florida East Coast Railway Co. (D. C.) 196 F. 1000; Slater v. Mexican National Railway Co., 194 U. S. 120, 24 S. Ct. 581, 48 L. Ed. 900; Wooden v. Western New York & P. R. R. Co., 126 N. Y. 10, 26 N. E. 1050, 13 L. R. A. 458, 22 Am. St. Rep. 803.

If this were strictly true there would be no question on the subject, for then the courts of one state would, aside from considerations of comity, never enforce different laws of another state, when as a matter of fact the books are full of cases where state courts have, without regard to their own laws, enforced contracts and permitted recovery for torts according to the laws of the states where the contracts were made and the torts committed. The reason for this brings into view the plaintiff's position where, in this case, he seeks under Virginia law recovery in a federal Pennsylvania district, where Pennsylvania law is enforced, for a tort committed in Virginia. The heart of the matter is that the law of the place of a tort gives a "right of action" to one falling within its terms; and it does so without regard to the residence of the tort-feasor. In such case "the law of the place where the right of action was acquired or the liability was incurred will govern as to the right of action," Story on Conflict of Laws (9th Ed.) 775; American Law Institute Restatement, Conflict of Laws, §§ 449, 455; Texas & N. O. R. Co. v. Gross, 60 Tex. Civ. App. 621, 128 S. W. 1173; Loucks v. Standard Oil Co., 224 N. Y. 99, 120 N. E. 198; Slater v. Mexican R. R. Co., 194 U. S. 120, 126, 24 S. Ct. 581, 48 L. Ed. 900; Ormsby v. Chase, 290 U. S. 387, 54 S. Ct. 211, 78 L. Ed. 378, 92 A. L. R. 1499; and as to the measure of damages, Western Union Telegraph Co. v. Brown, 234 U. S. 542, 34 S. Ct. 955, 58 L. Ed. 1457; "while all that pertains merely to the remedy will be controlled by the law of the state where the action is brought," Northern Pacific R. R. Co. v. Babcock, 154 U. S. 190, 14 S. Ct. 978, 981, 38 L. Ed. 958; Lauria v. E. I. DuPont De Nemours & Co. (D. C.) 241 F. 687. "A right of action is property." Loucks v. Standard Oil Co., 224 N. Y. 99, 120 N. E. 198, 201. The law applying to that property, though of a distant state, becomes a part of it and controls. "If a foreign statute gives the right, the mere fact that [the state in which suit is brought] does not give a like right is no reason [according to the court in Loucks v. Standard Oil Co., 224 N. Y. 99, 120 N. E. 198, 201] for refusing to help the plaintiff in getting what belongs to him, * * * unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal."

There is a marked difference between public policy—something that affects "good morals or natural justice," or the "general interest of the people of the state," justifying refusal to enforce a foreign right of action—and mere difference in state laws with respect to a particular subject. Lauria v. E. I. DuPont De Nemours & Co. (D. C.) 241 F. 687. "It by no means follows that, because the statute of one state differs from the law of another state, therefore it would be held contrary to the policy of the laws of the latter state. Every day our courts are enforcing rights under foreign contracts where the lex loci contractus and the lex fori are altogether different, and yet we construe these con-

tracts and enforce rights under them according to their force and effect under the laws of the state where made." Northern Pacific R. R. Co. v. Babcock, 154 U. S. 190, 14 S. Ct. 978, 981, 38 L. Ed. 958. We think the instant case falls within these general and well settled observations of law. Although the appellant has cited a few cases which have given us pause; of these Wooden v. Western N. Y. & P. R. R. Co., 126 N. Y. 10, 26 N. E. 1050, 13 L. R. A. 458, 22 Am. St. Rep. 803, is an example, we find they have been distinguished, limited, explained or disregarded in later cases, as in Loucks v. Standard Oil Co., 224 N. Y. 99, 120 N. E. 198; Domres v. Storms, 236 App. Div. 630, 260 N. Y. S. 335; Lauria v. E. I. DuPont De Nemours & Co. (D. C.) 241 F. 687.

■ The weight of the decisions sustains the challenged instruction of the learned trial judge in charging the law of Virginia as the proper measure of damages in this case.

The judgment is affirmed.